OPINION
Defendant-Appellant Henry Crane appeals from his conviction and sentence, following a no contest plea, upon one count of Possession of Drugs. Crane contends that the trial court erred in denying his motion to suppress. He contends that evidence was obtained as the result of "stale" search warrant, executed on the fourth day following issuance of the warrant, and that an incriminating statement he made was obtained as the result of custodial interrogation in violation of Miranda v. Arizona (1966),384 U.S. 436, 86 S.Ct. 1602.
We conclude that the execution of the search warrant on the fourth day following its issuance amounted, at most, to a violation of a statutory requirement, pursuant to R.C. 2933.24, that a search warrant be returned not later than three days after issuance, and that it did not rise to the level of a violation of Crane's constitutional rights, justifying application of the rule excluding evidence. We further conclude that Crane's incriminating statement was not the product of custodial interrogation. Accordingly, the judgment of the trial court isAffirmed.
 I
Dayton police officers came into information, in part from confidential sources, suggesting that illegal narcotics were being sold from Crane's residence at 721 Elmhurst, in Dayton. They obtained a warrant to search the premises, as well as Crane's person. This warrant was issued by the Honorable James F. Cannon, a judge of the Dayton Municipal Court, on May 14, 1999, at 4:15 p.m.
Dayton police officers executed the warrant at about 7:30 a.m. on Tuesday, May 18, 1999. Officers found heroin in plain view on a kitchen table. Crane was present. He was arrested and advised of his Miranda rights. Crane indicated that he did not wish to answer any questions without consulting his lawyer.
The police officer who testified at the suppression hearing, Dennis Castle, testified that the following then transpired:
Q. What did you do upon hearing that?
 A. I had advised him we were there conducting a search warrant. We would do so. He could remain at the residence. We would review the inventory upon completion of the search with him and provide him with a copy of the search warrant, which I did. I asked him no further questions.
Q. Did he respond to that?
 A. He said something to the effect it was fine, no problem. There was no real response otherwise.
Q. Did you then conduct your search?
A. Yes, sir, we did.
Q. Then what happened after conducting the search?
 A. Upon completion of the search, Mr. Crane had been removed to the marked uniform cruiser for transporting to the county jail. Before he left, I went to the cruiser, advised him what we had located in the residence, provided a copy of the inventory, and asked him if he had any questions in regard to what was going to transpire. Told him we'd contact the prosecutor's office the following day for charges and pursuing that matter. His response to me was, you've got me cold. I am the only one involved. I responded, that's up to the prosecutor's office.
 I provided him with a business card or phone number with my office number. Told him if he had any questions in the future, to get back with me.
* * * *
Q. What did you ask him?
 A. I explained to him what we had found. I explained what the process would be as far as being taken to jail. I explained to him I'd be contacting —
 Q. I asked you what you asked him, not what you explained.
A. I asked him if he had any questions.
Q. And did he answer you?
A. Yes.
Q. What did he say?
 A. He says, you got me cold. I'm the only one involved.
Q. Why did you ask him if he had any questions?
 A. As I previously stated, sir, I explained what the next procedure would be. I was explaining that to him. I asked if he had any questions in regard to that.
 Q. Detective, I have [sic] he had told you, had he not, he didn't wish to comment or make any statement whatsoever, is that correct?
 A. He told me he didn't want to answer questions without an attorney.
Q. Did you ask him if he had questions?
 A. In regard to the process I explained to him, yes, sir.
Crane was indicted for Possession of Drugs. He moved to suppress the evidence against him. Initially, his attack upon the search was based upon the lack of probable cause for the search, but he advised the trial court at the hearing that he was withdrawing that challenge to the search, but was instead predicating his challenge to the search, and to the evidence obtained as the result of the search, upon the ground that the search was not timely executed. He also contended that his incriminating statement was the product of custodial interrogation in violation of Miranda v. Arizona, supra. Following a hearing, the trial court denied his motion to suppress. Thereafter, Crane pled no contest, was found guilty, and was sentenced accordingly.
From his conviction and sentence, Crane appeals.
 II
Crane's First Assignment of Error is as follows:
 THE EXECUTION OF A SEARCH WARRANT MORE THAN THREE (3) DAYS AFTER ITS ISSUANCE RENDERS THE WARRANT INVALID AND THE SEARCH ILLEGAL.
Crane relies primarily upon Crim.R. 41(C), which provides that a search warrant "shall command the officer to search, within three days, the person or place named for the property specified." The State points out that Crim.R. 45(A) provides, generally, with respect to the computation of any period of time prescribed or allowed by the Ohio Rules of Criminal Procedure, that when the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. Thus, by the plain operation of the rule, a Saturday and a Sunday having intervened following the issuance of the search warrant on Friday, May 14, 1999, the officers had an extra two days, or until May 19, 1999, within which to execute the warrant.
Crane makes a strong argument that the purpose underlying the provision in Crim.R. 45(A) for excluding Saturdays, Sundays, and legal holidays when a prescribed period of time is less than seven days, does not apply in the case of search warrants, since they can, and often are, executed on Saturdays, Sundays, and legal holidays. Nevertheless, that provision in Crim.R. 45(A) clearly and unambiguously applies. Therefore, we agree with the State that the three-day rule provided for in Crim.R. 41(C) was not violated. See, State v. Johnson (Nov. 5, 1992), Cuyahoga App. No. 328645, unreported.
Although Crane primarily relies upon Crim.R. 41(C), he also relies upon R.C. 2933.24(A), which provides, in pertinent part, as follows:
 The [search] warrant shall be returned by the officer or individual holding it not later than three days after its issuance. It shall designate the judge or magistrate to whom it shall be returned, if such judge or magistrate is available.
It is a nice question whether the statutory requirement that a search warrant be returned within three days is intended to confer individual rights upon persons affected by search warrants. If so, this statutory provision would presumably prevail over Crim.R. 41(C), by virtue of Article IV, § 5(B) of the Ohio Constitution. There would then be a further issue arising from the fact that Crim. R. 45(A) purports to extend time not only with respect to deadlines arising by operation of rules of court, but also by operation of statute.
However, assuming, for purpose of analysis, that R.C.2933.24(A) conferred upon Crane a statutory right to have the officers execute the search warrant by not later than the third day after its issuance, which would have been May 17, 1999, we are not persuaded that the execution of that search warrant at 7:30 a.m. on the following day rises to the level of a violation of Crane's constitutional rights. As the State notes, the exclusionary rule of Mapp v. Ohio (1961), 367 U.S. 643,81 S.Ct. 1684, "will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights." Kettering v. Hollen (1980), 64 Ohio St.2d 232,235. Thus, in State v. Klemm (1987), 41 Ohio App.3d 382, the exclusionary rule was held inapplicable to a search conducted, pursuant to a search warrant, outside of the territorial jurisdiction of the police officers executing the search, but otherwise reasonably. In our view, the case before us is analogous. At most, the police officers in the case before us conducted a search a few hours beyond the temporal range within which they had been authorized, by warrant, to conduct a search. In our view, that did not constitute a violation of Crane's constitutional rights.
Crane argues, and we agree, that his right to be free from an unreasonable search should protect him from an unreasonably stale search — that is, where the search is performed so long after the facts giving rise to probable cause, that there can no longer be said to be probable cause for the search. Crane has directed us to no authority for the proposition that a search on these facts, four days after probable cause was established to the satisfaction of a neutral magistrate, that illegal narcotics were being sold from a residence, was conducted so long after the facts giving rise to probable cause that probable cause could no longer be said to exist. The location where drugs were allegedly being sold was a residence. It was not a transient location. Furthermore, we have examined the affidavit used to procure the search warrant, and we find nothing therein to suggest that the illegal sales of drugs believed to be taken place at 721 Elmhurst were likely to be of short-term duration.
Crane's First Assignment of Error is overruled.
 III
Crane's Second Assignment of Error is as follows:
 STATEMENTS MADE IN RESPONSE TO QUESTIONING BY POLICE AFTER AN ATTORNEY HAS BEEN REQUESTED ARE IMPROPERLY INDUCED.
After Crane's rights under Miranda v. Arizona, supra, were explained to him, he indicated that he was not willing to answer questions without first consulting a lawyer. We agree with Crane, therefore, that the arresting police officer was not thereafter permitted to interrogate him, since he was certainly in custody.
However, from this record, it is clear that the arresting police officer did not interrogate Crane. The officer explained the procedures involved with the search warrant and the arrest, and then asked Crane if he had any question about those procedures. Far from questioning Crane, the officer appears to have been affording Crane an opportunity to question the officer concerning any aspect of his situation that he did not understand. We do not condemn, but commend, Officer Castle for offering to explain to Crane any aspect of the search or arrest that was not clear to him. Upon this record, we cannot find that the incriminating statement Crane made, while in custody, was the product of interrogation.
Crane's Second Assignment of Error is overruled.
 IV
Both of Crane's assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF and KERNS, JJ., concur.
(HON. JOSEPH D. KERNS, Retired from the Court of Appeals, Second Appellate District, Sitting By Assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Johnna M. Shia, Charles A. Smiley, Jr., HON. JOHN KESSLER